[Cite as *State v. Schaade*, 2022-Ohio-4050.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

BRADLEY L. SCHAADE,

        Defendant-Appellant.

CASE NO. 2021-A-0037

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00368

## O P I N I O N

Decided: November 14, 2022
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Jessica Fross*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Gregory T. Stralka*, 6509 Brecksville Road, P.O. Box 31776, Independence, OH 44131 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Bradley L. Schaade ("Mr. Schaade"), appeals his conviction for gross sexual imposition and his sentence of 60 months in prison following a jury trial in the Ashtabula County Court of Common Pleas.

{¶2} Mr. Schaade asserts two assignments of error, contending that (1) he received ineffective assistance of counsel when his trial counsel failed to call witnesses who could contradict the victim's testimony; and (2) the trial court's imposition of the maximum possible sentence is contrary to the statutory sentencing guidelines. After a review of the record and pertinent law, we find as follows:

{¶3}  (1) Mr. Schaade has not established a claim for ineffective assistance of counsel.  The decision to call a witness is within the province of trial tactics, and Mr. Schaade has not shown that the outcome of the trial would have been different.

{¶4}  (2) Mr. Schaade has not established that the trial court erred in imposing his sentence.  There is no basis to conclude that the trial court failed to consider R.C. 2929.11 and 2929.12.  To the extent Mr. Schaade is challenging the trial court's application of R.C. 2929.11 and 2929.12, we are not permitted to review his sentence in that manner pursuant to binding precedent from the Supreme Court of Ohio.

{¶5}  Thus, we affirm the judgment of the Ashtabula County Court of Common Pleas.

## Substantive and Procedural History

{¶6}  In March 2019, A.M. was 12 years old and lived with her family in Rock Creek.  Mr. Schaade, who is A.M.'s uncle, lived in Ashtabula with his wife, Rebecca Schaade ("Mrs. Schaade"), and their four daughters.

{¶7}  During A.M.'s spring break from school, she stayed overnight at the Schaade's residence.  According to A.M., she was sleeping in a bed with one of her cousins when Mr. Schaade came into the room.  He untucked her blankets and put his hand on her thigh.  Mr. Schaade was then startled by something happening outside and ran out of the room.

{¶8}  A.M. and her cousin got up to use the bathroom.  Mr. and Mrs. Schaade were standing in the hallway and asked if the girls were okay and if they had heard "the yelling."  The girls replied they did not hear any yelling and went back to bed.

2

Case No. 2021-A-0037

{¶9} When A.M. returned to bed, she tucked the blankets underneath her. Mr. Schaade returned to the room and pulled the blankets off of her. He reached his hand into her pants and started touching her vagina over her underwear. A.M. told him to stop, and he covered her mouth with his arm. A.M. turned sideways so that Mr. Schaade could no longer reach her. Mr. Schaade then squeezed her buttock and left the room.

{¶10} When A.M. woke up the next morning, Mr. Schaade was making omelets for breakfast, which he did not normally do. While A.M. was sitting at the table, Mr. Schaade rubbed her back and said, "I like your bra. I wish your aunt would wear more bras like that."

{¶11} Later that morning, Christopher McGuire ("Mr. McGuire"), who was the fiancé of A.M.'s mother, picked her up from the Schaade's residence and drove her home. He described A.M.'s demeanor as "a little off." A.M. eventually informed both her mother and Mr. McGuire that Mr. Schaade had touched her inappropriately.

{¶12} Michelle Brown ("Ms. Brown") was the guidance counselor at A.M.'s school. After spring break, she received information from a student who rode the bus with A.M. that A.M. had been touched inappropriately. Ms. Brown spoke with A.M. and contacted Children Services and law enforcement.

{¶13} Patrolman Terrence Tulino ("Ptl. Tulino") of the Ashtabula City Police Department met with A.M. and her mother and prepared a report. Detective Anthony Tulino ("Det. Tulino") investigated the matter and interviewed Mr. Schaade.

{¶14} Mr. Schaade denied touching A.M. inappropriately. He stated that on the night in question, he had put on his jacket to smoke a cigarette. He heard a "thud" and thought one of his daughters may have fallen out of bed. When he checked, he noticed

3

that A.M. was uncovered. He covered A.M. and left the room. When he went outside, he observed a truck that he suspected had been stealing gas from his vehicle, so he went inside to alert Mrs. Schaade about it. He then went back outside, walked to the end of his driveway, and talked to one of his neighbors for about an hour.

{¶15} The Ashtabula County Grand Jury indicted Mr. Schaade on one count of gross sexual imposition, a third-degree felony, in violation of R.C. 2907.05(A)(4) and 2907.05(C)(2). Mr. Schade pleaded not guilty, and the matter was tried to a jury over two days.

{¶16} The state presented the testimony of A.M., Mr. McGuire, A.M.'s mother, Ms. Brown, Ptl. Tulino, and Det. Tulino. As its sole exhibit, the state presented a video recording of Det. Tulino's interview with Mr. Schaade. Mr. Schaade presented the testimony of three of his neighbors and Mrs. Schaade, and he testified on his own behalf. Following deliberations, the jury returned a guilty verdict.

{¶17} The trial court subsequently held a sentencing hearing and sentenced Mr. Schaade to 60 months in prison. The trial court filed judgment entries memorializing the jury's verdict and Mr. Schaade's sentence.

{¶18} Mr. Schaade appealed and presents the following two assignments of error:

{¶19} "[1.] The appellant's constitutional right to effective assistance of counsel was violated when such counsel failed to call a critical witness who could contradict the victim's testimony.

{¶20} "[2.] The appellant's maximum sentence in this matter is contrary to the guidelines in Ohio's sentencing statutes."

4

**Ineffective Assistance of Counsel**

{¶21} In his first assignment of error, Mr. Schaade contends that he received ineffective assistance of counsel when his trial counsel failed to call witnesses who could contradict the victim's testimony. According to Mr. Schaade, counsel should have called "Children Services workers" to testify regarding A.M.'s statements and her propensity to "make up stories."

{¶22} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness * * * considering all the circumstances." *Id.* at 688.

{¶23} "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

{¶24} Mr. Schaade has not shown that his counsel's performance was deficient. "The decision to call a witness is within the province of counsel's trial tactics." *State v.*

5

Case No. 2021-A-0037

*Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 46 (11th Dist.). As one court aptly explained, "In the opinion of trial counsel it may be advantageous * * * not to use a witness who, although helpful to the defendant in certain respects, could be made a harmful witness on cross-examination." *O'Malley v. United States*, 285 F.2d 733, 734 (6th Cir.1961). Thus, "'[d]ebatable strategic and tactical decisions will not form the basis for a claim of ineffective assistance of counsel, even if there had been a better strategy available.'" *Kovacic* at ¶ 46, quoting *State v. Beesler*, 11th Dist. Ashtabula No. 2002-A-0001, 2003-Ohio-2815, ¶ 13.

{¶25} In addition, Mr. Schaade has not shown a reasonable probability that the outcome of the trial would have been different. "[W]ithout a showing of prejudice, a failure to call a witness will not constitute ineffective assistance of counsel." *Id.* at ¶ 51. Further, "'[s]peculation as to what additional evidence might have revealed is insufficient to succeed on an ineffective assistance of counsel claim.'" *Id.*, quoting *State v. Pruiett*, 9th Dist. Summit No. 21889, 2004-Ohio-4321, ¶ 32.

{¶26} Mr. Schaade has not identified the "Children Services workers" that his counsel should have subpoenaed, nor has he explained what their actual testimony would have been. Although Mr. Schaade contends "there was an indication" that A.M. was prone to "making stuff up," he cites the following exchange that occurred during defense counsel's cross-examination of A.M.'s mother:

{¶27} "Q. Do you recall speaking to Children's Services about this incident with your daughter?

{¶28} "* * *

{¶29} "A. Yes, I did talk to Children Services.

6

{¶30} "* * *

{¶31} "Q.   Do you recall telling Children Services that your daughter, [A.M.], makes stuff up all the time?

{¶32} "A.  No, I do not recall that.

{¶33} "Q.  So, if a Children Services worker said they were told that, they would not be truthful or you don't remember?

{¶34} "A.  I do not remember saying that."

{¶35} Thus, the foregoing exchange involved a statement that A.M.'s mother allegedly made to Children Services.  It had nothing to do with A.M.'s statements to Children Services or the agency's assessment of her credibility or truthfulness.

{¶36} Accordingly, Mr. Schaade has not established a claim for ineffective assistance of counsel.

{¶37} Mr. Schaade's first assignment of error is without merit.

**Sentencing**

{¶38} In his second assignment of error, Mr. Schaade contends that his sentence of 60 months in prison is contrary to the statutory sentencing guidelines.

{¶39} The standard of review for felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16.  That provision states:

{¶40} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

7

**{¶41}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶42}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶43}** "(b) That the sentence is otherwise contrary to law."

**{¶44}** Mr. Schaade contends that the trial court failed to fully consider R.C. 2929.11 and 2929.12 in imposing his sentence.

**{¶45}** R.C. 2929.11 and 2929.12 apply as a general judicial guide for every sentencing. *See State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 36. R.C. 2929.11(A) provides that the trial court "shall be guided by the overriding purposes of felony sentencing," which are "[1] to protect the public from future crime by the offender and others, [2] to punish the offender, and [3] to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." To "achieve those purposes," the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.*

Case No. 2021-A-0037

**{¶46}** R.C. 2929.12(A) grants the sentencing court discretion to determine the most effective way to comply with the purposes and principles of sentencing. *Foster* at ¶ 37. In exercising that discretion, the court shall consider, along with any other relevant factors, the seriousness factors in R.C. 2929.12(B) and (C) and the recidivism factors in R.C. 2929.12(D) and (E). R.C. 2929.12(A).

**{¶47}** However, R.C. 2929.11 and 2929.12 do not mandate judicial factfinding. *See Foster* at ¶ 42. The trial court must merely *consider* the factors when imposing a felony sentence. *Id.* Even a silent record raises the presumption that a trial court considered the factors. *State v. Stanley*, 11th Dist. Trumbull No. 2020-T-0039, 2021-Ohio-549, ¶ 9.

**{¶48}** Here, the trial court expressly stated at the sentencing hearing and in its judgment entry that it considered the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors in R.C. 2929.12. Thus, there is no basis to conclude that the trial court failed to consider R.C. 2929.11 and 2929.12.

**{¶49}** To the extent Mr. Schaade is challenging the trial court's *application* of R.C. 2929.11 and 2929.12, we are not permitted to review his sentence in that manner. The Supreme Court of Ohio has held that R.C. 2953.08(G)(2)(a) does not provide a basis for an appellate court to modify or vacate a sentence based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 29. Moreover, the term "otherwise contrary to law" in R.C. 2953.08(G)(2)(b) does not encompass an appellate court's conclusion that a sentence is not supported by the record under R.C. 2929.11 and

9

Case No. 2021-A-0037

2929.12. *Id.* at ¶ 32. According to the court, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42.

**{¶50}** Accordingly, Mr. Schaade has not established that the trial court erred in imposing his sentence.

**{¶51}** Mr. Schaade's second assignment of error is without merit.

**{¶52}** For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

10