Edwin LOTZ, Appellant,

v.

Beryle C. SACKS, Warden, Ohio Penitentiary, Appellee.

No. 14283.

United States Court of Appeals
Sixth Circuit.

July 17, 1961.

James L. O'Connell, Cincinnati, Ohio, for appellant (appointed by the court).

Aubrey A. Wendt, Asst. Atty. Gen., Mark McElroy, Atty. Gen., on brief, for appellee.

Before SIMONS, Senior Judge, CECIL, Circuit Judge, and THORNTON, District Judge.

THORNTON, District Judge.

This is an appeal from an order of the District Court denying the appellant's petition for a writ of habeas corpus.

Appellant was indicted in Hamilton County, Ohio, on June 3, 1952. He was charged in count 1 with burglary (breaking and entering an inhabited dwelling during the night season with intent to commit a felony therein), in count 2 with larceny, and in count 3 with receiving and concealing stolen goods. He was arraigned on June 6, 1952 and pleaded not guilty. At the trial he was represented by counsel of his own choosing, and he was found guilty on February 27, 1953, on counts 1 and 2. On the same date he was given a life sentence on the burglary charge, and a sentence of 1 to 7 years on the larceny charge, both sentences to run concurrently and to be served at the Ohio penitentiary.

The District Court below permitted the appellant to proceed in forma pauperis. At the hearing on the application for the writ, the District Court considered the following complaints of the appellant:

1. That the sentences he was serving violated his constitutional guarantees because of an amendment to the indictment upon which he was tried.

2. That he was placed in double jeopardy.

3. That the jury was separated and dispersed before delivery of a verdict.

4. That he was arrested on another charge in full view of the jury.

5. That defense counsel rendered ineffective representation.

6. That the prosecuting attorney was guilty of misconduct.

As to the six points above, the District Court found:

1. That the indictment was authorized by § 2941.30 of the Ohio Revised Code, and that it violated none of petitioner's constitutional guarantees.

2. That there was no merit to the petitioner's allegation of double jeopardy.

3. That there was no merit to the allegation that the separation and dispersement of the jury violated his constitutional rights.

4. That petitioner had failed to prove that his arrest on another charge was in

full view of the trial jury, or that the jurors even knew of it.

5. That petitioner did not show by competent evidence that the representation of him by counsel chosen by him was so incompetent as to be violative of the Due Process Clause of the Fourteenth Amendment.

6. That the petitioner did not show by competent evidence that the conduct of the prosecuting attorney was such as to violate the petitioner's constitutional guarantees.

The District Court further concluded that the Trial Court had jurisdiction of the offense and of the defendant. He granted the application for leave to appeal in forma pauperis, and issued the certificate of probable cause. The matter is therefore here upon the record on appeal, the brief and supplementary brief of the appellant, appearing pro se, the answering brief by the Attorney General of the State of Ohio, and a reply brief for the appellant submitted by counsel appointed by this Court to represent appellant here.

We will proceed to discuss each of the six points raised by appellant, reserving Point 1 for the last point to be discussed.

### Point 2—Double Jeopardy

 This complaint is not properly reviewable by habeas corpus. It is a matter to be raised as a defense in a trial, and reviewable upon appeal from the trial court proceedings. Velazquez v. Sanford, 5 Cir., 150 F.2d 491, 493.

### Point 3—Jury Separation and Dispersement

 The separation of the jury during a trial is authorized by § 2945.31 of the Revised Code of Ohio and we therefore give no further consideration to this point.

### Point 4—Arrest Upon Another Charge in Front of the Jury

 From an examination of the transcript of the hearing in the District Court below, it is apparent that appellant's claim that he was arrested on an-

other charge in full view and hearing of the trial jury was totally lacking in proof.

### Point 5—Ineffective Counsel

 An examination of the transcript of the opening statement establishes without question that the appellant's contention that he was denied the effective assistance of counsel is without merit. This transcript, in fact, establishes that he was represented by counsel who was constantly on the alert in making proper and revelant objections to what counsel considered to be objectionable remarks made by the prosecuting attorney in his opening statement.

"Appellant's counsel was of his own choosing. Under such circumstances the rule has been often stated that only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court, can a charge of inadequate legal representation prevail." O'Malley v. United States, 6 Cir., 285 F.2d 733, 734.

From the only part of the record of the State court trial here for our consideration, it is abundantly clear that the proceedings in such trial did not make "a farce and a mockery of justice, shocking to the conscience of the Court." Appellant's charge of inadequate representation is therefore groundless.

### Point 6—Misconduct of Prosecuting Attorney

The appellant filed with the District Court a portion of the Bill of Exceptions, used by him on his appeal in the State courts, in support of his claim of misconduct on the part of the prosecuting attorney in relation to the opening statement to the jury.

The prosecuting attorney prefaced his opening statement with the following remarks:

"Nothing I say, of course, or the defense counsel says, is actually evidence. You will hear that in detail from the witnesses."

On each occasion when the trial judge sustained the objection of defense counsel to some improper statement made by the prosecution, the Court instructed the jury to disregard the complained-of statement, thus removing any alleged prejudicial matter from the attention of the jury.

From that portion of the record of the trial made available to this Court, it is equally clear that the trial judge was in complete control of the trial, and that he exercised appropriate control in advising the jurors to keep their minds clear of any of the stricken improper statements or conduct that might in any way result in prejudice to the appellant from the remarks of the prosecutor. There was a total lack of proof before the District Court that the appellant was prejudiced by any improper statement(s) by the prosecuting attorney in his opening statement.

## Point 1—Amended Indictment

The reply brief of appellant submitted by his court-appointed counsel relies upon the following as the basis for the requested reversal of the District Court on the grounds of a denial of due process in the State trial:

"The facts surrounding these events are not disputed. Originally the appellant was indicted for burglary of an inhabited dwelling in the night season said to have occurred at 2:30 a. m. on December 8, 1951. After a ten-day trial he was found guilty and sentenced to the Ohio Penitentiary on February 27, 1953. More than three weeks later, specifically on March 19, 1953, by which time the appellant was already in the penitentiary, an amended indictment was filed in his case, setting forth the time of the crime as 1:00 a. m. December 8, 1951, and it was upon this indictment that the records of the Court of Common Pleas in Hamilton County, Ohio, show that he was convicted. To complicate matters further, the testimony of the prosecuting witnesses was that the crime took place at about 9:00 p. m. on December 8, 1951, some twenty hours later than that set forth in the amended indictment, and during a different night season.

"Moreover, a consideration which has apparently been overlooked up to this time is the fact that the defense relied upon by the appellant at his trial was that of alibi. His attorney had filed the three day notice required by the Ohio Criminal Code, O. R.C. Section 2945.58, and witnesses were called to establish the defendant's alibi.

"It is the subsequent amendment of the indictment coming in a case where the defense of alibi has been raised and where the time of the crime as testified to by the State's witnesses did not even approximately correspond with the time named in either indictment that we believe makes this case one for reversal.

\* \* \* \* \* \*

"We wish to make it abundantly clear that we are not contending that the statute itself is unconstitutional; nor do we state that any amendment of an indictment after conviction or any amendment of an indictment as to time is unconstitutional. We are merely asserting that the action of the Trial Court, *under the precise circumstances of this case,* constituted a deprivation of due process, so that the District Court should have granted the appellant's writ of habeas corpus."

The Revised Code of Ohio, § 2941.30 provides for the amendment of an indictment, but the consideration of this section in relation to the actual facts here, is not warranted. However, it is apparent that appellant's complaint regarding the alleged amendment is based upon an understandable confusion in his mind. The certified docket entries of the Common Pleas Court of Hamilton County, State of Ohio, in Case No. 63948 indicate:

"that on the 3rd day of June, 1952, an indictment was returned charging this defendant (and one other) with the burglary of an inhabited dwelling, larceny and receiving and concealing stolen goods;

"that Lotz was arraigned on this indictment on June 6, 1952, at which time he was represented by counsel of his own choice, and entered a plea of not guilty."

This is the only indictment recorded in the docket as having been filed in Case No. 63948. The indictment itself carries the notation that it was reported as a true bill and was filed on the 3rd day of June, 1952. The first count charges that on the 8th day of December 1951, the appellant (and one other) at about the hour of 1:00 at night did unlawfully, maliciously and forcibly break and enter a certain building, to-wit, an inhabited dwelling house. The second count is a larceny count. The third count charges receiving and concealing stolen goods. The second and third counts allege crimes growing out of the burglary alleged in the first count. This indictment further carries a notation that on February 27, 1953, after a 9-day trial, the appellant was found guilty of the charges contained in counts 1 and 2 of the indictment. It contains the further notation that on the date of conviction appellant was sentenced by Renner, J. Everything noted on the indictment is in exact conformance with the docket entries. The docket is barren of any entry of a second amended indictment filed 15 days after appellant had been sentenced, specifically, March 19, 1953. The record on appeal discloses a certification of a "true and correct Transcript of the Indictment for Burglary Inhabited Dwelling Larceny and Receiving or Concealing Stolen Goods (Filed on March 19, 1953). Sentence (Entered on February 27, 1953. Minute 832 Judge John M. Renner) in the Case No. 63948, wherein The State of Ohio was Plaintiff and William W. Burns and Edwin Lotz were the Defendants." By the "Clerk of the Common Pleas Court of Hamilton County, Ohio" and dated "January 31, 1957."

Tracing "Minute 832" from this certification to the docket entries in Case No. 63948, we find that it identifies the following entry:

"Min. 832 Sentence. Ohio Penitentiary for Life, 1st Count, Ohio Penitentiary 1-7 yrs., 2nd Count, Sentences to run concurrently. Bondsman released Lotz"

Included in the foregoing certification is the only indictment filed in the cause. In addition there is one other document in the following language:

"The State of Ohio, Hamilton County Court of Common Pleas Criminal Division

The State of Ohio, v. Edwin Lotz,

No. 63948

*Indictment for Burglary Inhabited Dwelling, Larceny and Receiving or Concealing Stolen Goods.*

s/Enter
s/Renner, J.

"The Defendant herein having been convicted of Burglary of an Inhabited Dwelling, as charged in the 1st Count of the Indictment, without a recommendation of Mercy, and Larceny as charged in the 2nd Count of the Indictment, Value assessed at Eight-Hundred Dollars ($800.00), was this day brought before the Court and being informed of the Verdict of the Jury, was inquired of if he had anything to say why Judgment should not be pronounced against him and having nothing further to say than he hath already said.

"It is therefore Ordered and Adjudged by the Court that the Defendant Edwin Lotz, on the charge of Burglary of an Inhabited Dwelling contained in the 1st Count of the Indictment, be imprisoned and confined in the Ohio State Penitenti-

ary, and kept at hard labor but without solitary confinement for a period of Natural Life.

"It is further Ordered and Adjudged by the Court that the Defendant, Edwin Lotz, on the charge Larceny contained in the 2nd Count of the Indictment, be imprisoned and confined in the Ohio State Penitentiary, and kept at hard labor but without solitary confinement for a period of not less than One Year, nor more than Seven Years.

"It is further Ordered and Adjudged by the Court that these Sentences run concurrently and that he pay the costs of this Prosecution for which Execution is awarded."

 For some reason unknown to us, this document is entitled "Indictment." It appears that under Ohio law it is actually a "Transcript of the Sentence" and in some other jurisdictions is commonly known as a "Judgment of Conviction." While the title of the certification might lead a lay person to the conclusion that this document is an indictment, it is obvious from an examination of the subject matter that it is not in fact an indictment, despite its label. The certification further permits the inference that this document entitled "Indictment" was filed on March 19, 1953. However, an examination of the docket entries establishes the writing as an order confirming the sentence imposed by the Court on February 27, 1953. As further corroboration of the fact that appellant was tried on an indictment in which the time of the offense charged in the first count was alleged to be "the hour of one at night," we quote the following excerpt from the Trial Court's charge to the jury (from the transcript of a portion of the Bill of Exceptions):

"The Court: Let me suggest again as I did, ladies and gentlemen, I said that for the purpose of an offense constituting burglary of an inhabited dwelling house, such offense must occur in the night season, as I have defined it to you, and I did say to you that the indictment stated, and it does state, that this offense, in the first count of the indictment, occurred *about the hour of 1:00 at night*,[1] and I further instructed you that it was not important in that connection as long as it was within the night season as I have described it to you, whether it was 1:00 o'clock, 11:00 o'clock at night, 10:00 o'clock at night or 3:00 or 4:00 o'clock in the morning, as long as it stayed within the night season. But I did also caution you and make the exception, when I stated that it was not important, it was only in that connection that it had no real importance of the exact hour or, as stated, at 1:00 o'clock, but that the time is essential in this case because there has been a defense of alibi by the two defendants, and therefore certainly you must consider time, the time it occurred in connection with that defense of alibi.

"Mr. McIlwain:[2] That clears it as far as I am concerned."

This language carries the implication that there was conflicting testimony as to the time when the offense was committed, and it is elementary that the determination of conflicting testimony is for the jury, under proper instructions from the Court. Such proper instructions are exemplified by the above quoted portion of the charge and were acknowledged by the appellant, through his counsel, as being proper both as to the conflicting time element and as to appellant's alibi testimony. The transcript of the hearing before the District Court sustains the findings and conclusions of that court, and evidences that all of the complaints presented to the District Court were previously submitted to the Court of Appeals for the First Appellate District of Ohio, and resulted in an affirmance of the State Trial Court.

The appellant had a fair trial. The order below is affirmed.

---

1. Emphasis supplied.

2. Attorney for Lotz.